IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION


DAVID LAMONT,                                    09-CV-1391-PK

        Plaintiff,                        ORDER

v.

ANNING-JOHNSON CO.,

        Defendant.


BROWN, Judge.

     Magistrate Judge Paul Papak issued Findings and
Recommendation (#35) on January 24, 2011, in which he recommended
the Court grant in part and deny in part Defendant Anning-Johnson
Co.'s Motion (#16) for Summary Judgment.  Defendant filed timely
Objections (#37) to the Findings and Recommendation.  The matter
is now before this Court pursuant to 28 U.S.C. § 636(b)(1) and
Federal Rule of Civil Procedure 72(b).

     For the reasons that follow, the Court **ADOPTS** Magistrate
Judge Papak's Findings and Recommendation.

1 - ORDER

When any party objects to any portion of the Magistrate Judge's Findings and Recommendation, the district court must make a *de novo* determination of that portion of the Magistrate Judge's report.  28 U.S.C. § 636(b)(1).  *See also United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003)(*en banc*); *United States v. Bernhardt*, 840 F.2d 1441, 1444 (9th Cir. 1988).  For those portions of the Findings and Recommendation to which the parties do not object, the Court is relieved of its obligation to review the record *de novo* as to this portion of the Findings and Recommendation.  *Reyna-Tapia*, 328 F.3d at 1121.

<u>BACKGROUND</u>

On November 19, 2009, this matter was removed to this Court from Multnomah County Circuit Court.  Plaintiff seeks redress for adverse employment actions that Defendant allegedly took against Plaintiff.  In his Complaint Plaintiff asserts the following three claims against Defendant:  (1) unlawful age discrimination under Oregon Revised Statute § 659A and the Age Discrimination and Employment Act, 29 U.S.C. § 623(a)(1); (2) unlawful race discrimination on the basis of disparate treatment under Oregon Revised Statute § 659A.030(1)(b) and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(m); and (3) retaliation against Plaintiff for opposing Defendant's unlawful employment practices under Oregon Revised Statutes §§ 659A.030(1)(f) and

2 - ORDER

654.062(5)(a).

On September 16, 2010, Defendant filed its Motion for Summary Judgment as to each of Plaintiff's claims.

On January 24, 2011, the Magistrate Judge issued Findings and Recommendation in which he recommends the Court grant in part and deny in part Defendant's Motion for Summary Judgment as follows:  (1) grant Defendant's Motion as to Plaintiff's First and Second Claims for age and race discrimination and (2) deny Defendant's Motion as to Plaintiff's Third Claim for unlawful retaliation.

On February 7, 2011, Defendant filed timely Objections to the Findings and Recommendation.  In his Response to Defendant's Objections, Plaintiff does not specifically address Defendant's arguments, but instead rests on the factual and legal arguments in his Response to Defendant's Motion for Summary Judgment.

## **STANDARDS**

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Washington Mut. Ins. v. United States*, 636 F.3d 1207, 1216 (9th Cir. 2011).  *See also* Fed. R. Civ. P. 56(a).  The moving party must show the absence of a dispute as to a material fact.  *Rivera v. Philip Morris, Inc.*, 395 F.3d 1142, 1146 (9th Cir. 2005).  In response to a properly

3 - ORDER

supported motion for summary judgment, the nonmoving party must go beyond the pleadings and show there is a genuine dispute as to a material fact for trial. *Id.*

A dispute as to a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002)(quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The court must draw all reasonable inferences in favor of the nonmoving party. *Sluimer v. Verity, Inc.*, 606 F.3d 584, 587 (9th Cir. 2010). "Summary judgment cannot be granted where contrary inferences may be drawn from the evidence as to material issues." *Easter v. Am. W. Fin.*, 381 F.3d 948, 957 (9th Cir. 2004)(citing *Sherman Oaks Med. Arts Ctr., Ltd. v. Carpenters Local Union No. 1936,* 680 F.2d 594, 598 (9th Cir. 1982)).

A "mere disagreement or bald assertion" that a genuine dispute as to a material fact exists "will not preclude the grant of summary judgment." *Deering v. Lassen Cmty. Coll. Dist.,* No. 2:07-CV-1521-JAM-DAD, 2011 WL 202797, at *2 (E.D. Cal., Jan. 20, 2011)(citing *Harper v. Wallingford*, 877 F.2d 728, 731 (9th Cir. 1987)). *See also Jackson v. Bank of Haw.*, 902 F.2d 1385, 1389 (9th Cir. 1990). When the nonmoving party's claims are factually implausible, that party must "come forward with more persuasive evidence than otherwise would be necessary." *LVRC Holdings LLC*

*v. Brekka*, 581 F.3d 1127, 1137 (9th Cir. 2009)(citing *Blue Ridge*
*Ins. Co. v. Stanewich*, 142 F.3d 1145, 1149 (9th Cir. 1998)).

    The substantive law governing a claim or a defense
determines whether a fact is material.  *Miller v. Glenn Miller*
*Prod., Inc.*, 454 F.3d 975, 987 (9th Cir. 2006).  If the
resolution of a factual dispute would not affect the outcome of
the claim, the court may grant summary judgment.  *Id*.  "[W]e
require very little evidence to survive summary judgment in a
discrimination case, because the ultimate question is one that
can be resolved through a searching inquiry-one that is most
appropriately conducted by the fact-finder, upon a full record."
*Schnidrig v. Columbia machine, Inc.*, 80 F.3d 1406, 1410 (9th
Cir.)(citations omitted), *cert. denied*, 519 U.S. 927 (1996).


<u>**DISCUSSION**</u>

    Neither party raises any objection to that portion of the
Findings and Recommendation in which the Magistrate Judge
recommends the Court grant Defendant's Motion as to Plaintiff's
First and Second Claims for age and race discrimination.
Defendant, however, objects to the Magistrate Judge's
recommendation to deny Defendant's Motion as to Plaintiff's Third
Claim for retaliation.

    Plaintiff asserts in his Third Claim that Defendant
unlawfully retaliated against him because of (1) his complaints

to Defendant about its failure to comply with the Occupational
Safety and Health Administration (OSHA) requirements as to the
Material Safety Data Sheet (MSDS) in violation of Oregon Revised
Statute § 654.062(5)(a) and (2) his complaints of age and race
discrimination made to Defendant on January 16, 2009 (one day
after Defendant laid off Plaintiff) in violation of Oregon
Revised Statute § 659A.030(1)(f).

**I.    Unlawful Retaliation for Plaintiff's MSDS Complaint.**

Defendant objects to the Magistrate Judge's recommendation
to deny Defendant's Motion as to Plaintiff's Third Claim for
retaliation arising from Plaintiff's complaint concerning his
inability to work with chemicals without a respirator and
Defendant's failure to have an MSDS available.  Defendant objects
on the following grounds:  (1) Plaintiff has not satisfied his
burden to make a *prima facie* case of retaliation arising from
Plaintiff's MSDS complaint; (2) the Magistrate Judge
misinterpreted the timeline of events relating to Plaintiff's
MSDS complaint; (3) Plaintiff did not provide sufficient evidence
to show Defendant's grounds for laying off Plaintiff were a
pretext for retaliation; and (4) the Magistrate Judge erroneously
determined Plaintiff's placement in a journeyman role at the Ladd
Tower project was retaliatory.

**A.    Magistrate Judge's Decision.**

The Magistrate Judge found Plaintiff made a sufficient

showing to state a *prima facie* claim of retaliation by Defendant arising from Plaintiff's complaints on October 9, 2008, concerning his reaction to chemicals in use while he worked at the Toke America project site and Defendant's failure to have the required MSDS on the job site.  The Magistrate Judge found Plaintiff made a sufficient showing of a causal link between Plaintiff's MSDS complaint on October 9, 2008, and Defendant's decision to lay off Plaintiff on January 15, 2009.  In addition, despite Defendant's asserted nonretaliatory bases for laying off Plaintiff, the Magistrate Judge found Plaintiff provided sufficient evidence of pretext to survive Defendant's Motion for Summary Judgment.

  **B. Analysis.**

   **1. Plaintiff's *Prima Facie* Case of Retaliation.**

    Defendant objects to the Magistrate Judge's conclusion that Plaintiff demonstrated a causal link between Plaintiff's protected activity (his complaint about workplace safety as it related to inhalation of chemicals at the worksite) and the alleged adverse employment action by Defendant (laying off Plaintiff).  Specifically, Defendant contends the timing between Plaintiff's MSDS complaint and Defendant's decision to lay off Plaintiff (approximately three months) was too great to give rise to an inference of retaliation.

    As the Magistrate Judge noted, the Ninth Circuit has

held "when adverse employment decisions are taken within a reasonable period of time after the complaints of discrimination have been made, retaliatory intent may be inferred." *Passantino v. Johnson & Johnson Consumer Prods. Inc.,* 212 F.3d 493, 507 (9th Cir. 2000)("[W]e have held that evidence based on timing can be sufficient to let the issue go to the jury, even in the face of alternative reasons proffered by the defendant."). The Ninth Circuit has found proximity of a few months to be sufficient to establish an inference of causation, but has declined to find causation when as much as a year and a half elapsed between the protected activity and the adverse employment action. *See Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1065 (9th Cir. 2002) ("causation can be inferred from timing alone where an adverse employment action follows on the heels of protected activity," but 18 months was too long to infer causation). *See also Yartzoff v. Thomas*, 809 F.2d 1371, 1376 (9th Cir. 1987)(causation could be inferred when an adverse employment action took place less than three months after protected activity); *Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 273-74 (2001)(timing alone is insufficient to support a claim of retaliation when almost two years had passed between the protected activity and the adverse employment action).

        The record reflects Plaintiff began work on October 9, 2008, adjacent to a room at the Toke America jobsite in which

employees of another company were installing flooring with an epoxy that gave off fumes and which caused Plaintiff to suffer a headache and nausea.  The flooring workers were wearing respirators.  Plaintiff informed his immediate supervisor, Randy Johnson, and requested he retrieve the MSDS to determine whether the fumes were harmful to breathe.  When Johnson did not immediately retrieve the MSDS, Plaintiff called John Gauthier, the superintendent for Defendant's sheetrock tapers, to request a respirator.  Gauthier denied Plaintiff's request on the ground that their union contract prohibited the use of respirators without a formal test-fit of the device, which had not been performed.  Despite efforts by another foreman and superintendent, the MSDS could not be located.  Plaintiff finished a full day of work and made efforts, as suggested by Gauthier, to minimize his exposure to the fumes.

The next day Plaintiff worked approximately one hour before receiving a telephone call from Gauthier asking Plaintiff whether he had reported his complaint to the general contractor. Plaintiff responded he had not.  Gauthier then informed Plaintiff that Defendant's Construction Manager, Carl Philliber, wanted Plaintiff off of the jobsite immediately.  Philliber attested he removed Plaintiff because he heard Plaintiff had "created a stink" about the general contractor not having the required MSDS on the jobsite, and Philliber feared a conflict with the general

9 - ORDER

contractor could be bad for Defendant.  Philliber attested he did
not inquire further about the details of Plaintiff's complaint.
Plaintiff documented his complaint and the related events in a
letter he delivered to District Manager, Jason Roach.  Plaintiff
attested the letter made Gauthier upset because, as Gauthier put
it, the letter meant he had "an ass-chewing coming."  Defendant
never provided with Plaintiff a copy of the MSDS.

Soon thereafter Defendant reassigned Plaintiff to the
Ladd Tower project.  Plaintiff worked at the Ladd Tower project
for approximately two months before he was laid off.  The
Magistrate Judge concluded the three-month period between
Plaintiff's MSDS complaint and his layoff was sufficient to
satisfy Plaintiff's minimal *prima facie* burden to show that
Plaintiff's MSDS complaint could have reasonably motivated
Defendant's alleged retaliatory action.

On this record the Court finds Defendant's Objection is
not a sufficient basis to modify the Findings and Recommendation.

### 2.   Magistrate Judge's Timeline.

Defendant also contends the Magistrate Judge
misinterpreted facts as to the timeline of events relating to
Plaintiff's MSDS complaint.  Before Plaintiff was assigned to
work at the Toke America site, he worked at a job referred to as
Tanasbourne.  Plaintiff worked at Tanasbourne as a taping foreman
until the general contractor's superintendent requested

Plaintiff's removal from the site for alleged attendance issues. After Tanasbourne Plaintiff worked as a journeyman for Defendant at the Toke America and Ladd Tower projects until his layoff in January 2009.

Defendant contends the Magistrate Judge erred when he concluded there was a "pattern" of Defendant reducing Plaintiff's work responsibilities after Plaintiff made his MSDS complaint because, according to Defendant, any such "pattern" actually began before Plaintiff complained. The Magistrate Judge, however, did not incorrectly state the sequence of events in his Findings and Recommendation but merely considered Defendant's actions in their context when he determined a reasonable fact-finder could conclude on this record that Defendant's nonretaliatory explanations for laying off Plaintiff were pretext for retaliation. As discussed below, the Magistrate Judge concluded in light of the record as a whole that Plaintiff's evidence is sufficient to rebut Defendant's justifications for its actions and that a reasonable fact-finder could conclude Defendant's nonretaliatory explanations for laying off Plaintiff were pretext for retaliation.

Accordingly, on this record the Court finds Defendant's Objection is not a sufficient basis to modify the Findings and Recommendation.

3.   **Evidence of Pretext.**

Defendant contends Plaintiff did not provide sufficient evidence to support his contention that Defendant's reasons for laying off Plaintiff were pretext for retaliation.  Under the Title VII *McDonnell-Douglas* burden-shifting framework, after a plaintiff has made a *prima facie* showing of retaliation and a defendant has proffered a legitimate, nonretaliatory basis for its actions, the plaintiff must show retaliation was more than likely the defendant's motivation or that the defendant's proffered explanation is not entitled to credence.  See *Cornwell v. Electra Cent. Credit Union*, 439 F.3d 1018, 1028 (9th Cir. 2006).  *See also Harris v. Pameco Corp.,* 170 Or. App. 164, 178-79 (2000)(applies Title VII standard to retaliation claims under Oregon law).

Defendant articulates two bases for its decision to lay off Plaintiff on January 15, 2009:  (1) The job at the Ladd Tower site was nearing completion and the work was diminishing to such an extent that Defendant had to lay off workers at that site and (2) Plaintiff's attendance and production were inconsistent and warranted laying him off.  As evidence that Defendant did not retaliate against Plaintiff because of his October 9, 2008, MSDS complaint, Defendant points out that it retained Plaintiff to do journeyman work at the Ladd Tower site after Plaintiff made his MSDS complaint and continued to pay him foreman's wages even

12 - ORDER

though Defendant did not have any foreman work available.  The
record, however, reflects Plaintiff has provided sufficient
evidence to dispute Defendant's asserted bases for laying off
Plaintiff:  For example, despite the fact that work at Ladd Tower
was winding down, Plaintiff attests he had greater seniority,
more experience, and an ability to perform equal to other tapers
who were retained by Defendant at Ladd Tower after Plaintiff was
laid off.  Plaintiff also attests he was never disciplined or
otherwise counseled by Defendant about any performance- or
attendance-related issues.  For example, Plaintiff disputes the
characterization of his work at the Tanasbourne site, maintains
he only left the job site to perform his duties as a foreman, and
was never instructed or required to notify the general contractor
before leaving a job site.  Indeed, Plaintiff did not have any
documented performance or attendance issues in the three years he
worked with Defendant before the Tanasbourne job.

In addition, Plaintiff contends he was subject to
unreasonable scrutiny at Ladd Tower.  Even though Gauthier and
Philliber stated they laid off Plaintiff because of attendance
and performance issues, the record does not support their
statements.  For example, Plaintiff contends his only "attendance
issues" at Ladd Tower were the two days that he left the site
early after obtaining permission to attend family functions.
Plaintiff also attests, and Defendant does not dispute, Plaintiff

13 - ORDER

properly requested leave from his taping foreman, Shaun Hart, and
notified Hart that he was leaving early on both days.  On the
second day Gauthier visited the Ladd Tower site, Hart told
Gauthier he was having problems with Plaintiff relating to
attendance such as a "no-call, no-show" and routine
disappearances from the work site.  Hart, however, conceded at
his deposition that he never wrote up Plaintiff for any alleged
policy infraction.  According to Plaintiff, Hart stated he
"forgot" to inform Gauthier that Plaintiff had properly requested
and had been given permission to take that afternoon off.[1]  After
Gauthier informed Philliber about Hart's concerns and Gauthier's
failure to locate Plaintiff on the Ladd Tower site, Gauthier
states he, Hart, and Philliber decided to lay off Plaintiff.

Defendant asserts Gauthier and Philliber were, at
worst, honestly mistaken about Plaintiff's poor attendance and
absence from the job site because of Hart's statements and
omissions.  Defendant contends a mistaken but honestly-held
belief is a legitimate basis for an adverse employment action.
*See Villiarimo*, 281 F.3d at 1063.  The Ninth Circuit held in
*Villiarmo*:

In judging whether Aloha's proffered

---

[1] According to Plaintiff, in Hart's voicemail on January 15,
2009, informing Plaintiff that he was laid off, Hart apologized
to Plaintiff for the fact that Hart failed to inform Gauthier
that Plaintiff had permission to be away from the jobsite on the
previous day.

14 - ORDER

> justifications were "false," it is not
> important whether they were objectively false
> (e.g., whether Villiarimo actually lied).
> Rather, courts "only require that an employer
> honestly believed its reason for its actions,
> even if its reason is 'foolish or trivial or
> even baseless.'" *Johnson*, 260 F.3d at 733.
> As the district court correctly observed,
> Villiarimo presented no evidence that Aloha
> did not honestly believe its proffered
> reasons.

*Id.* This matter is distinct from *Villiarmo*, however, because it
was questionable in *Villiarmo* whether the plaintiff had stated a
*prima facie* claim of discrimination due to "sparse" evidence
based almost entirely on inconclusive hiring statistics. *Id.* at
1059, 1061-62. Furthermore, the plaintiff had not provided any
evidence to undermine the legitimacy of the defendant's reasons
for taking an adverse action against the plaintiff. *Id.* The
Court, however, concludes under the circumstances of this matter
that Plaintiff's direct evidence of animus on the part of
Gauthier and Philliber with respect to Plaintiff's MSDS complaint
and the lack of documentation of disciplinary actions or
counseling over the course of Plaintiff's employment  as to
attendance- or performance-related problems shows a genuine
dispute exists as to the legitimacy of the reasons provided by
Hart, Gauthier, and Philliber for Defendant's decision to lay off
Plaintiff.

As noted, the Magistrate Judge recommended granting
summary judgment to Defendant as to Plaintiff's first two claims

15 - ORDER

of discrimination on the ground that Plaintiff had not shown
Defendant's reasons for laying off Plaintiff were a pretext for
age or race discrimination.  Defendant argues the Magistrate
Judge's reasoning in his recommendation as to those two claims
also applies to the analysis of the issue of pretext as it
relates to Plaintiff's claim that he was laid off as a result of
his MSDS complaint.  The Court, however, concludes the Magistrate
Judge's reasoning with respect to Plaintiff's first two claims
does not undermine his conclusion as to Plaintiff's Third Claim;
*i.e.*, that Plaintiff provided sufficient evidence on this record
for a reasonable fact-finder to conclude that Defendant's reasons
for laying off Plaintiff were pretextual.  As noted, the record
reflects Plaintiff's supervisors were upset about Plaintiff's
MSDS complaint and laid him off indefinitely within a reasonably
short time following his complaint.  Although Defendant may be
able to prove at trial that its reasons for doing so were
legitimate, a reasonable trier of fact could, as noted, conclude
on this record that Plaintiff's supervisors targeted him for a
layoff and began looking for reasons to justify such a decision
after Plaintiff made the MSDS complaint.  Thus, the Court
concludes Defendant's Objection is not a basis to modify the
Findings and Recommendation.

> **4.   Defendant's Assignment of Plaintiff to Journeyman
> Tasks at Ladd Tower.**

Defendant also contends the Magistrate Judge erred when

16 - ORDER

he determined Defendant's assignment of Plaintiff to journeyman tasks at Ladd Tower jobs was retaliatory.  As noted, the Court has already determined Plaintiff's Third Claim survives summary judgment because Plaintiff has stated a *prima facie* claim of retaliation with respect to Defendant's decision to lay off Plaintiff and has properly rebutted Defendant's allegedly legitimate bases for doing so.  Nevertheless, the Court agrees with Defendant that Plaintiff did not plead in his Complaint that his assignment to the role of journeyman at Ladd Tower was an adverse employment action in retaliation for his MSDS complaint, and, therefore, Plaintiff cannot now base his claim for retaliation on this allegation.

## II.  Unlawful Retaliation for Plaintiff's Discrimination Complaint.

Defendant objects to the Magistrate Judge's recommendation to deny Defendant's Motion as to Plaintiff's Third Claim for retaliation arising from his January 16, 2009, complaint of age and race discrimination on the following grounds:  (1) Plaintiff did not satisfy his burden to establish a *prima facie* case of retaliation because he did not demonstrate that he suffered an adverse employment action as a result of his discrimination complaint; (2) Plaintiff has not pled nor properly supported a claim against Defendant for "failure to recall" Plaintiff from his layoff; and (3) Plaintiff did not present sufficient evidence to show Defendant's explanation for laying off Plaintiff was

17 - ORDER

pretextual.

**A.   Magistrate Judge's Decision.**

The Magistrate Judge found Plaintiff made a sufficient showing to state a *prima facie* claim of retaliation as the result of Plaintiff's complaint to Defendant's Human Resources Department on January 16, 2009.  Although the Magistrate Judge acknowledged Defendant laid off Plaintiff one day before Plaintiff made his complaint of unlawful discrimination, the Magistrate Judge found Plaintiff showed a causal link between Plaintiff's January 16, 2009, complaint and Defendant's failure to recall Plaintiff from his layoff.  In addition, despite Defendant's asserted nonretaliatory bases for not recalling Plaintiff from his layoff, the Magistrate Judge found Plaintiff provided sufficient evidence of pretext to survive Defendant's Motion for Summary Judgment.

**B.   Analysis.**

**1.   Adverse Employment Action.**

In his Third Claim Plaintiff asserts Defendant unlawfully retaliated against him because of his January 16, 2009, complaint of discrimination to Defendant's Human Resources Department.  Defendant, however, asserts Plaintiff cannot state a claim for retaliation arising from his January 16, 2009, discrimination complaint because he alleges in his Complaint that he was "discharged" on January 15, 2009, and, therefore, could

18 - ORDER

not have suffered an adverse employment action as a result of his discrimination complaint.  Even if the Court concludes Plaintiff was "laid off" on January 15, 2009, rather than "discharged" as pled, Defendant contends Plaintiff cannot demonstrate any adverse employment action because his position with Defendant has not changed since he complained about discrimination; *i.e.*, although he has not been recalled to work, Plaintiff remains eligible for recall and has not been issued a "no rehire" slip that would signal the end of his employment with Defendant.

The Magistrate Judge concluded Defendant's reading of Plaintiff's Complaint is too narrow.  Plaintiff alleges in his Complaint that his company cellphone was shut off (which, according to Plaintiff, was akin to a discharge) on the day that he made his discrimination complaint; *i.e.*, the day after he was laid off.  Thus, the Magistrate Judge concluded, when viewed in the light most favorable to the Plaintiff and in light of Plaintiff's minimal burden to establish a *prima facie* claim of retaliation, Plaintiff's allegations give rise to a reasonable inference that his discrimination complaint was the basis for Defendant failing to call Plaintiff back to work or, in effect, for discharging him.

Although Plaintiff imprecisely alleges in his Complaint that he was "discharged" on January 15, 2009, rather than laid off, the Court agrees with the Magistrate Judge that, viewing

19 – ORDER

Plaintiff's allegations in the light most favorable to him, it is clear from the context of Plaintiff's Complaint that he is asserting that Defendant took an adverse employment action against him after he was laid off in response to his discrimination complaint and that his layoff became a "discharge" after his complaint of discrimination on January 16, 2009.

The record reflects Philliber, Defendant's Construction Manager, and Roach, Defendant's District Manager, called Plaintiff on his company cell phone immediately following his discrimination complaint.  According to Plaintiff's deposition testimony, Philliber was "very angry" that Plaintiff had called "corporate," accused Plaintiff of acting "like a child that didn't get what he wanted," and "badgered" Plaintiff about whether he had called the company owner.  Plaintiff attested at his deposition that he believed at the time that he had been fired on the basis of Philliber's comments.  Within an hour of that conversation, Philliber and Roach shut off Plaintiff's company cellphone.[2]  Plaintiff contends his phone was not shut off during any previous period when he had been laid off and that Defendant only shut off cellphones for those employees who were discharged.  The timing between Plaintiff's conversation with

---

[2] Although neither Philliber nor Roach could recall ordering Plaintiff's cellphone to be shut off, both admitted they had the power to do so and did not dispute that it was, in fact, shut off.

Philliber and Roach, the fact that Philliber was angry over Plaintiff's decision to go to "corporate" with his discrimination complaint, and the decision to shut off Plaintiff's cellphone together support Plaintiff's allegation that his "layoff" became a "discharge" after his complaint.  The record reflects Plaintiff has been "laid off" for more than two years since his January 16, 2009, discrimination complaint without being recalled by Defendant.

Defendant states it does not have an official company policy as to how it handles cellphone service for employees who are laid off, but asserts it often turns off company cellphones to save money during layoffs that are expected to last a long time.  The timing between the January 16, 2009, conversation and Defendant's decision to cancel Plaintiff's cellphone together with the fact that Plaintiff has never been recalled for work, however, raise a sufficient inference of retaliation to state a *prima facie* claim that Plaintiff's layoff became a discharge after he made his complaint of discrimination even though Defendant argues Plaintiff "remains eligible for work with" Defendant.  The lack of a formal discharge, however, does not undermine Plaintiff's contention that Defendant has not recalled him from his layoff and has, in effect, discharged him.  In any event, Defendant is not entitled to summary judgment when there is a genuine dispute of material fact as to the nature of

Defendant's actions.

In summary, whether it became a "discharge" or was merely a temporary layoff that became a permanent one, the Court concludes Plaintiff's allegations are sufficient to state a *prima facie* claim of retaliation based on an adverse employment action by Defendant. *See Brooks v. City of San Mateo*, 229 F.3d 917, 928 (9th Cir. 2000)(describes an actionable adverse employment action as one that "deter[s] reasonable employees from complaining about Title VII violations").

Thus, the Court concludes Defendant's Objection is not a basis to modify or to reject the Magistrate Judge's Findings and Recommendation.

> **2.    Plaintiff's Failure to Plead a Claim of "Failure to Recall."**

Defendant also contends Plaintiff's claim fails because Plaintiff would have to explicitly plead a separate claim for "failure to recall" from his layoff.  Although Defendant is correct that Plaintiff did not plead a separate claim, Plaintiff's failure to plead a separate claim for "failure to recall" is not fatal in light of the Court's conclusion that Plaintiff has met his burden to state a *prima facie* claim for retaliation on the basis that Plaintiff's January 16, 2009, discrimination complaint is the reason he was not given work after his layoff.  Defendant does not cite any binding legal authority under Oregon law that requires Plaintiff to plead a

22 - ORDER

separate "failure to recall" claim.

The Court, therefore, concludes on this record that Defendant's Objection is not a basis to modify the Findings and Recommendation.

### 3.   Evidence of Pretext.

Defendant also contends Plaintiff did not provide sufficient evidence to support his contention that Defendant's nonretaliatory reasons for its actions were pretextual.

Defendant articulates the following reasons for shutting off Plaintiff's cellphone and for not recalling Plaintiff in the more than two years since Plaintiff's January 16, 2009, discrimination complaint:  (1) Defendant routinely shuts off company cellphones for laid-off foremen to save money if it expects a long layoff; (2) Plaintiff was not a foreman, and journeymen were not entitled to a company cellphone; (3) Defendant did not recall Plaintiff to work because it had recalled other, more qualified workers from layoff; and (4) other employees did not want to work with Plaintiff.

As noted, Defendant states it did not have an official policy for how it handled company cellphones during layoffs. Despite Defendant's assertion that it shut off company cellphones for laid-off employees who it did not expect to recall for long periods, however, Plaintiff testified he had been laid off for a period of five to six weeks in 2008 without having his cellphone

shut off.  Plaintiff also attested Defendant only shut off
foremen's cellphones when they were discharged.  After he was
laid off but before he made his discrimination complaint,
Gauthier, Plaintiff's supervisor, told Plaintiff that his layoff
would last "at least a week."  Gauthier attested at his
deposition that he thought it would last "a couple weeks."
Application of Defendant's stated cost justification for shutting
off a company cellphone when it expects a layoff of long duration
is undermined in this instance by Gauthier's statements because
it reveals Defendant was not anticipating Plaintiff's layoff
would be long and expected at the time the decision was made that
it would last approximately one to two weeks.

        Defendant also contends it shut off Plaintiff's company
cellphone because Plaintiff was not a foreman at the time of his
layoff.  Even though the record reflects Plaintiff was performing
journeyman work on the Ladd Tower project between November 2008
and January 2009 when there were not any foreman positions
available, Defendant still paid Plaintiff the wage of a foreman
while he was performing journeyman work and also allowed
Plaintiff to retain a company cellphone while he performed
journeyman work.  Thus, the record does not suggest Plaintiff was
demoted from the position of foreman.  Accordingly, this record
undermines Defendant's explanation for shutting off Plaintiff's
company cellphone on January 16, 2009.

24 - ORDER

Although Plaintiff asserts he is more qualified and more senior than some of the employees recalled from layoff, this record is insufficient to determine whether the recalled employees were, as Gauthier stated in his Declaration, more "suitable to run the available jobs." Gauthier also testified in his Declaration that he did not contact Plaintiff for recall because Plaintiff did not ask to be recalled as other foremen had, which suggests it was partly because of Plaintiff's lack of contact with Gauthier rather than Plaintiff's qualifications that led to Gauthier's decision not to recall Plaintiff. Yet it is undisputed that Plaintiff contacted Gauthier on January 16, 2009, seeking to be placed on another crew. Gauthier also attests in his Declaration that he considered for recall those foremen who called him periodically to seek work. In his deposition, however, Gauthier attested he knew which of his foremen were at home waiting for more work (Plaintiff, among them) and that he would call them if he had a job for them to run. In any event, Defendant did not contact Plaintiff about additional work.

Finally, Defendant stated in its Concise Statement of Material Facts that other "carpentry foremen" did not want Plaintiff assigned to their team. Gauthier states in his Declaration that three of Defendant's foremen expressed their desire to have Plaintiff assigned to other teams and that Gauthier took "their requests into account" when deciding not to

recall Plaintiff to work.  Considering Gauthier's statements as a
whole, the Court concludes his reasons for not calling Plaintiff
back to work are inconsistent and contradictory.

On this record the Court concludes Plaintiff has
demonstrated and the record reflects Defendant's justifications
for its actions are not sufficiently "entitled to credence."  See
*Cornwell*, 439 F.3d at 1028.  Thus, the Court concludes Plaintiff
has provided sufficient evidence from which a reasonable fact-
finder could conclude that Defendant's justifications for its
decision to not call Plaintiff back to work were pretextual.  The
Court, therefore, concludes this Objection by Defendant is not a
basis to modify the Findings and Recommendation.

In summary, the Court has performed a *de novo* review of the
record in relation to each of the Objections raised by Defendant
and concludes none of those Objections provide a basis to modify
the Findings and Recommendation.  The Court also has reviewed the
legal principles relating to those portions of the Findings and
Recommendation to which the parties did not object and does not
find any legal error.


## CONCLUSION

Accordingly, the Court **ADOPTS** Magistrate Judge Papak's
Findings and Recommendation (#35).  Accordingly, the Court **GRANTS**
**in part** and **DENIES in part** Defendant Anning-Johnson Co.'s Motion

26 - ORDER

(#16) for Summary Judgment as follows:

1.  **GRANTS** Defendant's Motion as to Plaintiff's First Claim
    for unlawful age discrimination and Second Claim for
    unlawful race discrimination and

2.  **DENIES** Defendant's Motion as to Plaintiff's Third Claim
    for unlawful retaliation.

IT IS SO ORDERED.

DATED this 6th day of June, 2011.

                        /s/ Anna J. Brown

                        _____
                        ANNA J. BROWN
                        United States District Judge